2018R000036/ADL/CD/KD

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CRIMINAL NO. 19-394 |
| | : | |
| **STEVE YOUNG KANG,** | : | 18 U.S.C. § 1344 |
| a/k/a **STEVEN YOUNG KANG,** | : | 18 U.S.C. § 1343 |
| a/k/a **YOUNG TAE KANG,** | : | 18 U.S.C. § 2 |
| **Defendant** | : | |

### INFORMATION

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

### Relevant Individuals and Entities

1.  At all times relevant to this Information:

    a. Defendant STEVE KANG, a/k/a "STEVEN YOUNG KANG," a/k/a "YOUNG TAE KANG" ("KANG") was a real estate broker who participated in the sale of multiple properties located in the State of New Jersey through "short sales" in his own name and in the names of others, which were sold shortly thereafter at a substantial profit (the "Short Sale Properties").

    b. Victim Banks 1 and 2 (collectively, the "Victim Banks") were federally regulated national banking associations, the accounts of which were then insured by the Federal Deposit Insurance Corporation, making each of them a "financial institution" as that term is defined in Title 18, United States

Code, Section 20.  The Victim Banks held liens on various Short Sale Properties.

### The Short Sale Process

2.  A "short sale" of a residential property typically referred to situations in which a house owner obtained a mortgage loan from a lender to buy or refinance a house, could not make the loan payments owed, sought to end those payments by selling the house for less than the outstanding mortgage loan amount, and asked the lender to accept the reduced sales price of the house in full satisfaction of the mortgage loan.  Such transactions were called "short sales" because the actual market value of the house (and, therefore, the price at which the house owner could sell it on the open market) was less than the amount owed by the house owner to the lender.  By cancelling the loan for less than the loan amount still owed, the lender accepted a "short" payment amount from the house owner.

3.  Because the lenders had the legal right to collect the full loan amount, a short sale (and resulting cancellation of the mortgage loan) required the lender's approval.

4.  As part of the short sale approval process, lenders typically required house owners and their agents to document the house owner's financial hardship and inability to continue making loan payments, as well as the actual fair market value at which the house could then be sold.  To accomplish this, house owners were required to document their finances, and affirm that the proposed short sale was an "arm's-length" transaction; that is,

one in which there was no undisclosed relationship between the house owner selling the home and the person or entity buying it from the house owner (other than the short sale itself). Lenders also often required house owners to affirm that there were no side agreements with other parties that were unknown to the lender.

5. Before approving a short sale, lenders also typically required the house owner to engage a realtor to market the property through a multiple listing service ("MLS") to ensure that the residence was sold for actual market value so that the lender's losses on the short sale were minimized.

6. In addition, when selling their houses, house owners were required to sign HUD-1 Settlement Statements. A HUD-1 Settlement Statement was a standardized form used for residential real estate transactions that itemized the receipt and disbursement of funds to a buyer and seller. At closing, the buyer, house owner seller, and settlement agent certified that the information contained in the HUD-1 Settlement Statement was true and correct. Lenders and their servicers relied on the HUD-1 Settlement Statement when approving a short sale.

7. The documentation, affirmations, and information described in paragraphs 4, 5, and 6, above, were material to lenders' short sale approval decisions.

**The Fraudulent Scheme**

8. Between in or about June 2013 and in or about January 2017, defendant KANG and others known and unknown illegally obtained more than

approximately $2,763,000 by fraudulently inducing multiple lenders, including the Victim Banks, to approve short sales of the Short Sale Properties for amounts substantially below what those properties were then worth, in the manner and using the means detailed below.

### Goal of the Fraudulent Scheme

9. The goal of the fraudulent scheme was for KANG and others ("Co-Schemers") to enrich themselves by fraudulently deceiving lenders in connection with Short Sale Properties.

### Manner and Means of the Fraudulent Scheme

10. It was a part of the scheme that defendant KANG and one or more Co-Schemers identified multiple residential properties in New Jersey to be used as Short Sale Properties.

11. It was a further part of the scheme that defendant KANG sold, and caused others to sell, Short Sale Properties.

12. It was a further part of the scheme that, without the knowledge or authorization of multiple lenders (including the Victim Banks), defendant KANG and one or more of his Co-Schemers:

> (a) caused materially false hardship letters and hardship affidavits purportedly signed by short sale sellers to be submitted to Victim Banks in connection with the Short Sale Properties. The purpose of these submissions was to mislead the Victim Banks about the ability of house owners to repay their current mortgage loans;

(b) caused "straw buyers" to purchase Short Sale Properties from house owners so as to allow a Co-Schemer to secretly maintain control of those properties;

(c) caused Victim Banks to be misled about the actual value of the Short Sale Properties by:

    (i) damaging drywall, removing appliances, and otherwise negatively impacting the cosmetic appearance of Short Sale Properties to lower their apparent value;

    (ii) preventing legitimate, higher offers to be made for Short Sale Properties, or when made, to be communicated to Victim Banks. This was done by artificially limiting the time Short Sale Properties were listed on an MLS, and misrepresenting to potential third party buyers that these properties were unavailable for sale;

    (iii) obtaining quit claim deeds from various house owners to prevent the purchase of those properties by third parties that were not Co-Schemers;

    (iv) concealing resales of Short Sale Properties to buyers for amounts significantly higher than Victim Banks had been defrauded into believing

the Short Sale Properties were worth. At times, those higher resale prices had been agreed to by a Co-Schemer and third party buyer even before the Victim Bank relinquished control over a Short Sale Property;

(d) used false HUD-1 Settlement Statements to hide various side deals with, and other secret disbursements made to, Co-Schemers in connection with the sales of the Short Sale Properties; and

(e) caused a portion of the profits fraudulently obtained through the resale of Short Sale Properties to be disbursed to one or more bank accounts and, at times, split among one or more Co-Schemers, including defendant KANG, other house sellers, realtors and others.

13. It was further a part of the fraudulent scheme that defendant KANG sent and received emails from various Co-Schemers pertaining to their illegal activities, and that a Co-Schemer maintained handwritten and computer-generated records detailing specific aspects of the fraud concerning particular Short Sale Properties.

## COUNT ONE
## (BANK FRAUD)

14.     Paragraphs 1 through 13 of this Information are realleged and incorporated herein.

15.     On or about June 10, 2013, in Bergen County, in the District of New Jersey and elsewhere, the defendant

> STEVE YOUNG KANG,
> a/k/a "STEVEN YOUNG KANG",
> a/k/a "YOUNG TAE KANG"

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Victim Bank 1, and to obtain monies, funds, credits, assets, and other property owned by, and under the custody or control of, Victim Bank 1, by means of materially false and fraudulent pretenses, representations and promises, that is, misrepresented and caused to be misrepresented to Victim Bank 1 the actual resale value of the Short Sale Property located at 513 Roff Avenue, Palisades Park, New Jersey.

In violation of Title 18, United States Code, Sections 1344 (1) and (2) and Section 2.

## COUNT TWO
## (WIRE FRAUD AFFECTING A FINANCIAL INSTITUTION)

14. Paragraphs 1 through 13 of this Information are realleged and incorporated herein.

15. On or about September 3, 2013, in Bergen County, District of New Jersey and elsewhere, the defendant,

> STEVE YOUNG KANG,
> a/k/a "STEVEN YOUNG KANG",
> a/k/a "YOUNG TAE KANG"

having devised and intending to devise a scheme and artifice to defraud Victim Bank 2, and to obtain money or property from Victim Bank 2 by means of false and fraudulent pretenses, representations, or promises, knowingly transmitted and caused to be transmitted by means of a wire communication in interstate and foreign commerce any writing, sign, signal, picture and sound for the purpose of executing such scheme and artifice; that is, an e-mail from defendant KANG at *****6@gmail.com to a Co-Schemer referring to a property located at 71 Bluehill Rd, Norwood, NJ 07648.

In violation of Title 18, United States Code, Section 1343 and Section 2.

## FORFEITURE ALLEGATIONS

1. As the result of committing the offenses constituting a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), as alleged in this Information, the defendant,

> STEVE YOUNG KANG,
> a/k/a "STEVEN YOUNG KANG",
> a/k/a "TAE YOUNG KANG"

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses charged in Counts One and Two of this Information, and all property traceable thereto, including but not limited to $1,000,000.00 in United States currency.

### Substitute Assets Provision

2. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

*Craig Carpenito*
Craig Carpenito
United States Attorney

| CASE NUMBER: _____ United States District Court District of New Jersey | UNITED STATES OF AMERICA v. Steve Young Kang, a/k/a "Steven Young Kang," a/k/a "Tae Young Kang" | INFORMATION 18 U.S.C. §§ 1344, 1343, and 2 | CRAIG CARPENITO UNITED STATES ATTORNEY NEWARK, NEW JERSEY ANDREW LEVEN ASSISTANT U.S. ATTORNEY CHARLIE DIVINE AND KEVIN DI GREGORY SPECIAL ASSISTANT UNITED STATES ATTORNEYS NEWARK, NEW JERSEY 973.645.2700 |
|---|---|---|---|